# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH SCHULENBURG, an individual; and MOONLIGHT101, a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HANDEL'S ENTERPRISES, INC., an Ohio Corporation; LEONARD FISHER, an individual; JIM BROWN, an individual, and DOES 1-25, inclusive,,<br><br>Defendants. | Case No.: 18cv513-GPC(WVG)<br><br>**TENTATIVE ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE FIRST AND SECOND CAUSES OF ACTION**<br><br>**[Dkt. No. 22.]** |

Before the Court is Defendants' motion to dismiss the first, second and fourth causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6) and motion to transfer the third and fifth causes of action to a pending case in the United States District Court for the Northern District of Ohio. (Dkt. No. 22.) Plaintiffs filed an opposition and Defendants filed a reply. (Dkt. Nos. 25, 26.) Based on the reasoning below, the Court tentatively DENIES Defendants' motion to dismiss the first and second causes of action. The Court has not reached a tentative decision as to the motion to dismiss the fourth cause of action and the motion to transfer the case to the Northern District of Ohio. The

1

parties will be permitted to address the tentative ruling set out below and the remaining issues at the hearing that will be held at 1:30 p.m. on September 7, 2018.

## Background

On January 30, 2018, Plaintiffs Kenneth Schulenburg ("Plaintiff" or "Schulenburg") and Moonlight101 (collectively "Plaintiffs") filed a complaint in state court against Defendant Handel's Enterprises, Inc. ("Handel's") alleging (1) violations of California Corporations Code ("Corporations Code") sections 31123, 31107; (2) offering for sale and sale of an unregistered franchise in violation of Corporations Code sections 31110, 31111, 31119, 31300; (3) violation of Corporations Code sections 31119, 31107, 31300; and (4) negligence. (Dkt. No. 1-2.) On March 9, 2018, Handel's removed the case to this Court. (Dkt. No. 1.)

After the Court granted Defendant's motion to dismiss with leave to amend, on June 29, 2018, Plaintiff filed a first amended complaint ("FAC") against Defendants Handel's and added as defendants Leonard Fisher, Handel's Chief Executive Officer, and Jim Brown, Handel's Chief Operational Officer (collectively "Defendants"). (Dkt. No. 20, FAC ¶¶ 5, 6.) The FAC now alleges (1) violation of Corporations Code sections 31123 and 31107; (2) violation of Corporations Code sections 31119, 31107 and 31300; (3) breach of contract; (4) violation of California's unfair business practices; and (5) declaratory relief. (Dkt. No. 20, FAC.)

Defendant Handel's is a franchisor in the ice cream retail industry which bears the brand name, "Handel's Ice Cream." (Id., FAC ¶ 26.) Around October 2015, Schulenburg started negotiations with Handel's to purchase a Handel's franchise. (Id. ¶ 27.) On information and belief, Handel's registered its 2015 Franchise Disclosure Document, ("FDD"), which had an issuance date of October 20, 2104 with California's Department of Business Oversight ("DBO"), which was approved on April 13, 2015 ("2015 FDD"). (Id. ¶ 28.) Around October 15, 2015, Handel's provided the 2015 FDD to Schulenburg. (Id. ¶ 30.)

On information and belief, Handel's subsequently applied to amend the 2015 FDD on January 11, 2016. (Id. ¶ 29.) On January 19, 2016, the DBO approved the application for amendment ("Amended 2015 FDD") which became effective on that date. (Id.) On information and belief, the Amended 2015 FDD contains material modifications compared to the 2015 FDD. (Id.)

Around December 17, 2015, Plaintiff sent Handel's payment of $5,000 as a deposit towards the franchise fee even though Schulenburg had not yet signed a franchise agreement with Handel's. (Id. ¶ 31.) On January 19, 2016, at 9:32 a.m., Schulenburg wired into Handel's bank account the remaining $45,000 due for the franchise fee to Handel's. (Id. ¶ 32.) On January 21, 2016, a Handel's agent met with Schulenburg in San Diego County and provided another copy of the 2015 FDD which was no longer effective. (Id. ¶ 33.) On that day, the parties signed a Unit Franchise Agreement. (Id.) It is not disputed that Handel's never provided Schulenburg with a copy of the Amended 2015 FDD.

The FAC also alleges breach of the Unit Franchise Agreement alleging that once operations began at the location in Encinitas, Defendants maliciously disrupted Plaintiffs' business operations and agreements with third parties, refused to fulfill orders, inspected the store outside of regular hours, debited money from franchisee's account without written authorization when royalties exceeded $10,000 and failed to provide support and services. (Id. ¶¶ 40, 47, 76.)

## Discussion

### A. Legal Standard on Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief,"

and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

**B.  First Cause of Action – Violation of California Corporations Code sections 31123 and 31107**

The first cause of action alleges violations of Corporations Code sections 31123 and 31107 for Handel's failure to cease offers and sales of a franchise while an application for amendment was pending and its failure to comply with the exemption requirements under section 31107. (Dkt. No. 20, FAC ¶¶ 50-61.) In their motion, Defendants argue that the first cause of action for violations of sections 31123 and 31107 of the Corporations Code must be dismissed because filing an amendment with the DBO does not invalidate a previously effective FDD; the Amended 2015 FDD did not contain "material changes"; and the registration exception under section 31107 does not apply to this case. Plaintiffs respond that Defendants' interpretation of the statutory provisions is erroneous.

The intent of the California Franchise Investment Law ("CFIL") is "to provide each prospective franchisee with the information necessary to make an intelligent

decision regarding franchises being offered, . . . to prohibit the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled, and to protect the franchisor and franchisee by providing a better understanding of their business relationship." Cal. Corp. Code § 31001. All franchisors must comply with the procedures outlined under the CFIL.

Before offering a franchise for sale, a franchisor must file a Uniform Franchise Registration Application ("UFRA") along with a proposed franchise disclosure document ("FDD") with the DBO. Id. §§ 31111, 31114. Once the UFRA and FDD have been approved, it becomes effective for one year from the effective date. Id. § 31120. The registration must be renewed every year. Id. § 31121. A franchisor has a duty to promptly notify the DBO by submitting in writing an application to amend the registration of any material changes in the disclosure. Cal. Corp. Code § 31123. The DBO "may by rule further define what shall be considered a material change for such purposes, and the circumstances under which a revised offering prospectus must accompany such application." Id.

Section 31107 provides an exemption from the disclosure requirements for "any offer (but not the sale) by a franchisor of a franchise" made "while an application for renewal or amendment is pending" as long as the prospective franchisee receives all of the following:

> (a) The franchise disclosure document and its exhibits as filed with the commissioner with the application for renewal or amendment.
>
> (b) A written statement from the franchisor that (1) the filing has been made but is not effective, (2) the information in the franchise disclosure document and exhibits has not been reviewed by the commissioner, and (3) the franchisor will deliver to the prospective franchisee an effective franchise disclosure document and exhibits at least 14 days prior to execution by the prospective franchisee of a binding agreement or payment of any consideration to the franchisor, or any person affiliated with the franchisor, whichever occurs first, showing all material changes from the franchise disclosure document and exhibits received by the prospective franchisee under subdivision (a) of this section.

> (c) The franchise disclosure document and exhibits in accordance with paragraph (3) of subdivision (b) of this section.

Cal. Corp. Code § 31107.

Here, the parties do not dispute the facts concerning Handel's disclosures to Schulenburg but disagree on the interpretation of the statute. In this case, on October 15, 2015, Handel's provided Schulenburg an effective 2015 FDD. (Dkt. No. 20, FAC ¶ 30.) On December 17, 2015, Schulenburg sent Handel's a deposit payment of $5,000. (Id. ¶ 31.) On January 11, 2016, Handel's submitted an application for amendment to the DBO, which was approved and became effective on January 19, 2016. (Id. ¶ 29.) On January 19, 2016, Schulenburg wired the remaining $45,000 of the franchise fee, and on January 21, 2016, Schulenburg signed the Unit Franchise Agreement. (Id. ¶¶ 32, 33.) The parties do not dispute that Handel's never provided Schulenburg with a copy of the Amended 2015 FDD or any of the documents required for an exemption under section 31107.

The Court agrees with Plaintiffs that Defendants misconstrue the meaning of sections 31123 and 31107. Defendants argue that section 31123 does not apply because the changes in the Amended 2015 FDD were not material because the DBO accepted Handel's 2015 amendment and "in doing so, declined to find that the changes were material or that a revised offering was required under section 31123." (Dkt. No. 22 at 21.[1]) Section 31123 states a "franchisor shall promptly notify the commissioner in writing, by an application to amend the registration, of any material change in the information contained in the application as originally submitted, amended or renewed." Cal. Corp. Code § 31123. This puts the duty on the franchisor to make a determination whether the new information is material. Otherwise, any immaterial changes are not to

---

[1] Page numbers are based on the CM/ECF pagination.

be reported to the commissioner. Handel's argues that it is the DBO that makes a determination whether a change is material sufficient to require a registration amendment and relies on the second sentence in section 31123 which provides that the "commissioner may by rule further define what shall be considered a material change for such purposes, and the circumstances under which a revised offering prospectus must accompany such application." This provision merely asserts that in addition to the franchisor's duty to promptly notify the commissioner of any material changes, the commissioner may additionally further define materials changes that would justify a revised offering prospectus. The requirement that it is the franchisor's duty to determine whether changes are material is supported by section 31200 which states, "[i]t is unlawful for any person willfully to make any untrue statement of a material fact in any application, notice or report filed with the commissioner under this law, or willfully to omit to state in any such application, notice, or report any material fact which is required to be stated therein, or *fail to notify the commissioner of any material change as required by Section 31123*." Cal. Corp. Code § 31200 (emphasis added). Section 31200 requires that the franchisor make the initial determination whether a change is material requiring compliance with section 31123.

Next, Defendants argue that section 31107 is inapplicable in this case because it provided Schulenburg with a copy of the effective 2015 FDD on October 15, 2015 so the proposed amendment submitted on January 11, 2016 could not have been provided to Schulenburg at that time. They also argue that because section 31107 provides that no payment of consideration can be made to the franchisor until at least 14 days prior to execution of the franchise agreement, in this case, Schulenburg already provided the consideration in December, therefore, section 31107 does not apply. Moreover, since Schulenburg submitted consideration more than 14 days after the 2015 FDD was effective, it complied with section 31107. Plaintiffs disagree with Defendants' interpretation of section 31107.

7

Section 31107 specifically states that an offer, not a sale, by a franchisor of a franchise while an application for amendment is pending is exempt from the disclosure requirements if the franchisee receives certain documents concerning the application for amendment. Cal. Corp. Code § 31107. Section 31107, contrary to Plaintiffs' argument, does not require a franchisor to cease offers of a franchise while an application for amendment is pending. Instead, the offer may remain pending during an application for amendment as long as certain documents outlined in section 31107 are provided to the franchisee. Here, the parties do not dispute that Handel's did not provide the documents as provided in section 31107 to Schulenburg. California "allow[s] the franchisor to continue offering franchises pending the effectiveness of an amendment. However, the sale may not close in California until the amendment has been approved. Once the FDD has been approved in California, the franchisor must provide the prospective franchisee with a copy of the amended FDD and proceed with the normal sales procedures." Terrence M. Dunn, <u>Material Changes and the FDD: Amending and Going Dark</u>, Franchise Law Journal, 535 543 (2015).

Here, Handel's provided Schulenburg with a copy of the effective 2015 FDD on October 15, 2016. (Dkt. No. 20, FAC ¶ 30.) A $5000.00 deposit was provided to Handel's in December. (<u>Id.</u> ¶ 31.) While not alleged, it appears that an offer of franchise was pending at that time. When Handel's applied for an amendment on January 11, 2015, (<u>id.</u> ¶ 29), Handel's was required to comply with section 31107 if it wanted the offer to continue while the application for amendment was pending. Notably, the FAC alleges that on January 21, 2016, when Schulenburg signed the Unit Franchise Agreement, Handel's provided him a copy the 2015 FDD. (<u>Id.</u> ¶ 33.) However, on that date, January 21, 2016, the 2015 FDD was no longer effective and the Amended 2015 FDD was the relevant FDD and should have been provided to Schulenburg. Therefore, Plaintiffs have alleged a violation of Corporation Code sections 31123 and 31107, and the Court tentatively DENIES Defendants' motion to dismiss.

## C. Second Cause of Action – Violation of Corporations Code sections 31119 and 31107

The second cause of action claims that Defendants violated Corporations Code sections 31119 and 31107 for failing to provide a copy of the Amended 2015 FDD at the time of contract and failing to delay signing of the franchise agreement or paying of consideration 14 days after receipt of an effective FDD. (Dkt. No. 20, FAC ¶¶ 62-72.) Defendants contend that they complied with the provisions by providing Schulenburg with a copy of the registered and effective 2015 FDD in October 2015, more than 14 days before he made payments or executed the Unit Franchise Agreement. Plaintiffs respond that the 2015 FDD Schulenburg received in October 2015 does not satisfy section 31119 because as of January 19, 2016, the Amended 2015 FDD was approved and effective; therefore, section 31107 requires that certain documents, including the Amended 2015 FDD that was provided to the DBO, should have been given to them. At the very least, Defendants should have provided Schulenburg with the Amended 2015 FDD one day before finalizing the sale on January 21, 2016.

Section 31119(a) provides,

> [i]t is unlawful to sell any franchise in this state that is subject to registration under this law without first providing to the prospective franchisee, at least 14 days prior to the execution by the prospective franchisee of any binding franchise or other agreement, or at least 14 days prior to the receipt of any consideration, whichever occurs first, a copy of the franchise disclosure document, together with a copy of all proposed agreements relating to the sale of the franchise.

Cal. Corp. Code § 31119(a). Section 31107 also has a similar 14 day waiting period and provides that "(3) the franchisor will deliver to the prospective franchisee an effective franchise disclosure document and exhibits at least 14 days prior to execution by the prospective franchisee of a binding agreement or payment of any consideration to the franchisor, or any person affiliated with the franchisor, whichever occurs first, showing

9

all material changes from the franchise disclosure document and exhibits received by the prospective franchisee under subdivision (a) of this section." Cal. Corp. Code § 31107.

While Defendants argue that they provided Plaintiffs with a copy of the registered and approved 2015 FDD in October 2015, more than 14 days prior to any payment was made in December 2015 or execution of the Unit Franchise Agreement on January 21, 2016, they fail to recognize that they filed an application for amendment to the commissioner on January 11, 2016 acknowledging there were material changes. The Amended 2015 FDD became effective on January 19, 2016, the day that Schulenburg paid the remaining $45,000 to Handel's and two days prior to the execution of the Unit Franchise Agreement. The CFIL's purpose, to provide prospective franchisees with all the information necessary to make a decision about whether to buy a franchise, is defeated by Handel's failure to provide Schulenburg with a copy of an effective FDD at the time of execution of the Unit Franchise Agreement. The Court tentatively concludes that Plaintiffs have plausibly stated a claim for violation of sections 31119 and 31107 and DENIES Defendants' motion to dismiss the second cause of action.

**D.    Fourth Cause of Action – Unfair Competition Law, Cal. Bus. & Prof. Code section 17200**

Defendants also move to dismiss the fourth cause of action for violations of California's unfair competition law because the Unit Franchise Agreement contains a choice of law provision where the parties agreed that Ohio law would apply. Plaintiffs oppose asserting that the choice of law provision is unenforceable arguing that California has a strong public policy to protect California residents from abusive out-of-state choice of law provisions. Both parties make summary choice of law arguments with little substantive analysis. The Court will seek further argument on this part of the motion to dismiss.

**E.     Motion to Transfer under 28 U.S.C. § 1404(a) to the Northern District of Ohio**

Defendants also move to transfer under 28 U.S.C. § 1404(a) the third and fifth causes of action as well as any causes of action the Court does not dismiss to the Northern District of Ohio where there is currently litigation between the parties. Plaintiffs oppose.

**1.     Background**

On March 5, 2018, Handel's file a complaint against Schulenburg, Moonlight101, and Schulenburg's partner, Juliana Ortiz ("Ortiz"). (Handel's v. Schulenburg et als., Case No. 18cv508-BYP, N. Dist. of Ohio, Dkt. No. 1.) The complaint alleges claims for breach of contract of the Unit Franchise Agreement and trademark license agreement, fraudulent concealment, fraud as to Ortiz, conversion, tortious interference with prospective economic advantage, trademark infringement, dilution, false designation and unfair competition as well as declaratory judgment and injunctive relief. (Id., Dkt. No. 1.) In conjunction with filing the complaint, Handel's also filed a motion for preliminary injunction to enjoin Defendants "from operating an unauthorized ice cream parlor at 425 Market Street, San Diego, California unless and until they cease to be a Handel's franchisee and remove all of Handel's trademarked, proprietary, confidential, and trade secret information from the Market Street location." (Id., Dkt. No. 3 at 2.) On June 22, 2018, the district court in Ohio granted Plaintiff's motion for preliminary injunction. (Id., Dkt. Nos. 42, 43.) It ordered, in relevant parts, the following,

> B. Defendants Mr. Schulenburg, Moonlight101, and Ms. Ortiz, their officers agents, services, employees, and all persons acting in concert or participation with Defendants are hereby ENJOINED from being directly, indirectly, or in any manner whatsoever involved with any business which is competitive with or similar to Handel's in any way, including the operation of any non-Handel's ice cream parlor, including specifically the Cali Cream Homemade Ice Cream retail business located at 425 Market Street, San Diego, California.
> C. Defendants Mr. Schulenburg, Moonlight101, and Ms. Ortiz, their officers agents, services, employees, and all persons acting in concert or participation with Defendants are hereby ENJOINED from suggesting any affiliation between Handel's and Cali Cream, including in advertising. . . .
> E. This Order shall remain in effect until Defendants' status as a Handel's franchisee has been resolved, whether by dispositive motion, settlement, or

completion of the trial on the merits, or until modified by the Court, but no longer than January 22, 2020.

(Id., Dkt. No. 43 at 3-4.)

On the same day, the Ohio district court also denied Defendants' motion to dismiss, stay, or in the alternative, to transfer venue to this Court. (Id., Dkt. No. 44.) In that order, the district court held that it had subject matter jurisdiction over the claims against Defendants, (id. at 5), venue was proper in the Northern District of Ohio due to the forum selection clause in the Unit Franchise Agreement and due to Defendants' substantial contacts with Ohio, equity precluded application of the first to file rule because the California lawsuit was substantially different and even if first to file applied, equity barred its application because the California action was anticipatorily filed following notice of breach from Handel's, (id. at 9-11). The court also denied the motion to transfer venue to the Southern District of California under 28 U.S.C. § 1404(a) concluding that the forum selection clause is enforceable and that the public interest of having trial in a forum that is at home with the state law that must govern the case and because Handel's is an Ohio Corporation did not support transfer. (Id. at 16-17.) The district court in Ohio rejected the defendants' argument that California courts are likely more familiar with California franchise law as "baseless" stating it is "certainly capable of applying California franchise law if it were to become necessary." (Id.) On June 25, 2018, Defendants filed a notice of appeal to the Sixth Circuit of the district court's order granting motion for preliminary injunction. (Id., Dkt. No. 45.)

### 2. Effect of Ohio District Judge's Ruling on Motion to Transfer

Neither party has directly addressed the effect of District Judge Benita Y. Pearson's ruling denying Schulenburg, Moonlight101 and Ortiz's motion to transfer the case to this Court, (Case No. 18cv508-BYP, N. Dist. of Ohio, Dkt. No. 44), on the instant motion to transfer. Both conduct their own analysis based on a motion to transfer under 28 U.S.C. § 1404(a).

12

At the upcoming hearing, the Court will inquire as to the parties' positions on impact of Judge Pearson's ruling on this court's consideration of the pending motion to transfer.

### 3. 28 U.S.C. § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted). A motion to transfer lies within the broad discretion of the district court and must be determined on an individualized basis. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). The defendant has the burden to show that the action should be transferred under § 1404(a). Id. at 497-99. Because the analysis involved is "flexible and individualized," the district court has broad discretion in deciding a motion for transfer of venue. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Courts employ a two-step analysis to determine whether transfer is proper. Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985). First, a court must ask whether the transferee court is one where the action "might have been brought" and then determine whether "convenience of parties and witnesses in the interest of justice" favor transfer. Id.

### a. Whether the Action Could Have Been Brought in the Northern District of Ohio

A civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For a corporation, venue is proper in "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

Defendants argue that this case could have been brought in the Northern District of Ohio because Handel's principal place of business is in Ohio and Schulenburg's counsel conceded that personal jurisdiction exists over Schulenburg and Ortiz in the Ohio Action. (Dkt. No. 22-2, D's Ex. 2, Tr. at 45:16-19.) Plaintiffs do not disagree with Defendants' argument that the case could have been filed in the Northern District of Ohio.

### b. Convenience Factors and Interests of Justice

Once the Court determines that the case could have been brought in the Northern District of Ohio, the Court looks to factors addressing the convenience of the parties, convenience of the witnesses, and the interests of justice which include "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones, 211 F.3d at 498-99. Other significant factors the Court considers are the existence of a forum selection clause and the public policy of the forum state. Id. at 498-99. The moving party bears the burden of persuasion to make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

Defendants argue that transfer serves the interests of justice because the pending Ohio Action involves some of the same parties, issues, witnesses, and facts, and transfer

14

would avoid multiplicity of litigation from a single transaction and eliminate the possibility of inconsistent rulings. Plaintiffs' arguments focus primarily on District Judge Pearson's alleged erroneous interpretation of California law.[2]

The Court will seek further clarification as to the parties' positions with respect to these factors at the September 7th hearing.

**Conclusion**

Based on the above, the Court tentatively DENIES in part Defendants' motion to dismiss the first and second causes of action and will entertain further arguments at the scheduled hearing on September 7, 2018.

IT IS SO ORDERED.

Dated: September 6, 2018

Hon. Gonzalo P. Curiel
United States District Judge

---

[2] In her order, District Judge Pearson also concluded that the Ohio case and the California case were not substantially similar; therefore, Plaintiffs argue her ruling should have no impact on this case. However, District Judge Pearson's ruling, filed on June 22, 2018, was based on comparing the original complaint in this case with the Ohio complaint. The original complaint only addressed violations of the disclosure provision of the CFIL which is distinct from breaches of the Unit Franchise Agreement. However, on June 29, 2018, Plaintiffs filed a FAC that altered the original complaint and added additional allegations of breach of the Unit Franchise Agreement, UCL claims, and declaratory relief as well as adding the CEO and COO of Handel's who are two residents of Ohio. (Dkt. No. 20.) There is now overlap between the two cases.